**Edward E. HARRIS, Plaintiff,**

v.

**WACKENHUT SERVICES, INC., Defendant.**

**Civil Action No. 04–2132 (RBW).**

United States District Court, District of Columbia.

Aug. 27, 2009.

Charles W. Day, Jr., Joseph D. Gebhardt, Valencia R. Rainey, Gebhardt & Associates, LLP, Washington, DC, for Plaintiff.

Henry Morris, Jr., Kristine J. Dunne, Arent Fox Kintner Plotkin & Kahn, PLLC, Washington, DC, for Defendant.

### SUPPLEMENTAL MEMORANDUM OPINION [1]

REGGIE B. WALTON, District Judge.

The plaintiff, Edward Harris, brought this action against the defendant, Wackenhut Services, Inc. ("Wackenhut"), pursuant to the District of Columbia Human Rights Act ("Human Rights Act"), D.C.Code §§ 2–1401.01(a)(1), 2–1402.11(a)(1), and 2–1402.61(a) & (b)(2001), asserting claims of having been subjected to (1) a hostile work environment because of his race; (2) disparate treatment based on his race; (3) retaliation; and (4) constructive discharge. Complaint ("Compl.") at 14–16. Specifically, the plaintiff's complaint as pled alleges that the defendant subjected him "to a hostile work environment and constructively discharged him by discriminatorily demoting him and depriving him of his supervisory responsibilities over approximately 1,000 employees and retaliating against him for opposing senior management's discriminatory treatment of [the] [d]efendant's African American employees." Compl. at 2. On September 28, 2007, the Court issued an Order resolving the parties' cross-motions for summary judgment, granting in part and denying in part the defendant's motion, and denying the plaintiff's motion for partial summary judgment. The Court followed that Order with a Memorandum Opinion, issued on December 9, 2008, 590 F.Supp.2d 54 (D.D.C.2008). Following the resolution of the cross-motions for summary judgment, the case proceeded with the scheduling of a pretrial conference.

In preparing for the pretrial conference and as a result of the discussions at that conference the Court came to the realization that there were several outstanding issues in need of resolution before this case could proceed to trial. Those issues include: (1) whether the defendant's summary judgment motion challenged the adequacy of the plaintiff's showing of pretext, and thus left an unresolved issue; (2) whether the jury should consider as support for the plaintiff's racial discrimination claim evidence of alleged discriminatory acts outside of the one-year statute of limitations; (3) whether the plaintiff adequately alleged in his complaint that he was discriminated against based on his opposition to the racial discrimination of others in a protected class; and (4) whether the plaintiff can seek compensatory damages based on the defendant's alleged injury to his career and reputation.[2] At the Court's

---

1. This Supplemental Memorandum Opinion, and its accompanying Order, supplement and amend the Court's December 9, 2008 Memorandum Opinion and September 28, 2007 Order granting in part and denying in part the defendant's motion for summary judgment, and denying the plaintiff's cross-motion for partial summary judgment.

2. The Court considered the following submissions regarding these issues: Plaintiff's [July 20, 2009] Memorandum of Law Regarding Pre–Trial Evidentiary Issues; Wackenhut Services, Inc.'s Supplemental Brief Regarding Plaintiff's Failure to Establish Pretext And Plaintiff's Proposed Use of Untimely Act in Support of His Discriminatory Transfer Claim; Plaintiff's [July 23, 2009] Memorandum of Law Regarding Pre–Trial Evidentiary Issues; and Wackenhut Services, Inc.'s Response to Plaintiff's Proposed "Opposition to

request, each party filed written submissions setting forth their legal basis for their respective positions on each issue and made oral representations at both the Pretrial conference and the August 10, 2009 hearing at which the Court orally resolved the pending motions in limine.[3] Upon consideration of the parties' written submissions, the evidentiary record presented to the Court, the applicable legal authority, the oral arguments presented by the parties, and in accordance with the oral reasons expressed by the Court at the hearing on the motions, the Court finds that it indeed failed to address an issue raised by the defendant in its summary judgment briefing, *i.e.*, whether the plaintiff made a sufficient showing of pretext to defeat the legitimate, non-discriminatory reason proffered by the defendant for its decision to transfer the plaintiff. Now, having considered the question, for the reasons set forth in this Supplemental Memorandum Opinion the Court finds that summary judgment must be entered in favor of the defendant, thus resolving the one claim remaining in this case. This conclusion takes into account, *inter alia,* the Court's finding that the plaintiff did not properly allege in his complaint that he was personally discriminated against based on his race due to his opposition to the discrimination allegedly directed against his predominantly African–American staff; in fact, no such theory is actionable under the Human Rights Act as the basis for a *racial discrimination* claim, as opposed to a claim for retaliation or coercion.[4]

## I.  BACKGROUND

The facts of this case are set forth thoroughly in the Court's December 9, 2008 Memorandum Opinion addressing the parties' cross-motions for summary judgment, which are incorporated by reference herein. However, because the Court is revisiting some of the issues addressed in that Memorandum Opinion upon further review of the arguments presented in the defendant's motion, a brief summary of the defendant's motion and the Court's decision is necessary.

### 1.  The Defendant's Basis For Summary Judgment on the Plaintiff's Discrimination Claim

In its motion for summary judgment, the defendant argued that it was entitled to the entry of summary judgment as a matter of law, in part because some of the alleged discriminatory conduct occurred outside of the statute of limitations period, and in part because the acts complained of did not establish a hostile work environment, or amount to either discrimination or retaliation. *See generally* Wackenhut Services, Inc.'s Memorandum In Support Of Its Summary Judgment Motion ("Def.'s Mem."). Specifically, the defendant's primary argument for why the plaintiff's racial discrimination claim was not legally sustainable was because "Wackenhut treated Plaintiff the same as it treated similarly situated white employees[,] [and] [t]hus, no reasonable jury could infer discrimination." *Id.* at 29. The defendant further argued that its decision to transfer

Discrimination" Claim and Proposed Damages for "Injury to Career and Reputation."

**3.**  A separate written Order was issued by the Court addressing the resolution of the parties' motions in limine.

**4.**  The remaining issue upon which the Court ordered supplemental briefing, whether the

plaintiff can pursue a claim for compensatory damages relief based on the defendant's alleged injury to his career and reputation, will not be addressed because it is rendered moot by the decisions reached in this Supplemental Memorandum Opinion and its accompanying Order.

the plaintiff was made for "legitimate non-discriminatory business reasons," and relied on case law stating that no claim could lie where there was " 'no objective evidence to suggest that the adverse actions taken against [a plaintiff] occurred because of [his] race, nor that similarly situated individuals of other races were treated differently.' " *Id.* at 29–30 (quoting *Lemmons v. Geo. Univ. Hosp.*, 431 F.Supp.2d 76, 88 (D.D.C.2006)). The remainder of the defendant's argument pertained to the alleged absence of any evidence that a constructive discharge occurred. *Id.* at 30–31. In going through this constructive discharge analysis, the defendant reiterated its position that "Wackenhut did not discriminate against [the] [p]laintiff," again citing *Lemmons* for the proposition that a claim for constructive discharge, like a claim for hostile work environment, " 'require[s] the plaintiff to prove the existence of intentional discrimination.' " *Id.* at 31 (quoting *Lemmons*, 431 F.Supp.2d at 91 n. 16). The plaintiff opposed the defendant's motion, rejoining that, in fact, his claim of racial discrimination could be sustained on his allegations and the record, and the defendant's rationale for transferring him was merely a pretext for illegal discrimination. *See* Plaintiff's Memorandum In Oposition [sic] To Defendant's Motion For Summary Judgment at 26–29. In its reply, the defendant mainly reiterated its previous arguments, but added that the "[p]laintiff [did] not dispute the legitimate good faith reasons for the transfer that Wackenhut details in its Statement of Material Facts not in Dispute," and because the defendant's rationale for transferring the plaintiff to a new position was justified on a non-racially motivated basis, "no reasonable jury could infer that Wackenhut discriminated against [the] [p]laintiff." Reply to Plaintiff's Opposition to Wackenhut Services, Inc.'s Summary Judgment Motion at 12–14.

## 2. The Court's Resolution of the Defendant's Motion For Judgment on the Plaintiff's Discrimination Claim

In responding to the defendant's challenge to the plaintiff's racial discrimination claim, the Court in its earlier summary judgment opinion, which is incorporated by reference herein, first set forth the familiar burden-shifting analysis required to establish a claim for racial discrimination under the Human Rights Act. Dec. 9, 2008 Memorandum Opinion, 590 F.Supp.2d at 69–70. The first stage of this analysis, reflected the Court, requires a plaintiff to establish that " 'he is a member of a protected class, . . . [ ]he suffered an adverse employment action, and . . . the unfavorable action [gave] rise to an inference of discrimination.' " *Id.* at 70 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999)). Undertaking that analysis, the Court determined that "regardless of whether the plaintiff's impending reassignment is characterized as a lateral transfer or a demotion, the determination of whether it amounted to an adverse employment action raise[d] a genuine issue of material fact that must be submitted to a jury," and denied in part the defendant's motion for summary judgment on the plaintiff's racial discrimination claim on that basis. *Id.* at 71. However, as to "the plaintiff's allegations concerning the racial jokes and comments made to him or in his presence by the defendant's employees, the Court [found] that the plaintiff [had] not presented sufficient evidence to establish that the jokes or comments rose to the level of adverse employment actions" and granted in part the defendant's motion as to those allegations. *Id.* at 72.

## 3. Rationale for Revisiting the Previous Decision

Based on its finding that a question of material fact existed at the first stage of

the burden-shifting analysis, the Court did not advance its analysis to the question of whether an inference of discrimination could be sufficiently found upon the evidentiary record before it. Nor did the Court go on analyze the two additional stages of the test, namely, whether the defendant proffered a legitimate, non-discriminatory rationale for its decision, and if so, whether the defendant's proffered non-discriminatory rationale was a pretext for discrimination to conceal its true unlawful discriminatory motivation. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon further review of the defendant's motion for summary judgment, which, in fact, although however summarily, raised the issue of the inadequacy of the evidence for establishing discriminatory pretext through its reliance on passages from the *Lemmons* case, the Court now concludes that it erred in ceasing its analysis at the first stage of the burden-shifting test. In doing so, the Court misplaced its focus on the plaintiff's immediate burden, the first stage of the burden-shifting framework, and lost sight of the plaintiff's ultimate burden: establishing with admissible evidence that the defendant engaged in intentional racial discrimination against him. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

However untimely, having now recognized this shortcoming—made all the more evident upon reflection of the discussions engaged in during the pretrial conference and the August 10, 2009 hearing—the Court will now conduct that analysis and resolve the question of whether the plaintiff can establish that racial discrimination occurred on the record before it. In so doing, the Court will also address a related issue on which it sought supplemental briefing—whether the plaintiff adequately alleged in his complaint that he was discriminated against based on his opposition to the racial discrimination of others in a protected class—as well as the defendant's motion in limine seeking to exclude stray comments by a handful of high-level executives in the defendant's employ that the plaintiff asserts are relevant to his claim for racial discrimination.

## II. STANDARD OF REVIEW

As the Court stated in its December 9, 2008 Memorandum Opinion, summary judgment pursuant to Federal Rule of Civil Procedure 56 should be awarded to the movant if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C.Cir.2006) (citing *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)), accepting the nonmoving party's evidence as true and drawing "all justifiable inferences" in the non-moving party's favor, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the Court need not rely on any "conclusory allegations unsupported by factual data," *Pub. Citizen Health Research Group v. FDA,* 185 F.3d 898, 908 (D.C.Cir.1999) (internal quotation marks and citations omitted), and should only find that "there is [a] [genuine] issue for trial [where] there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party," *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (citation omitted). Moreover, as the Supreme Court observed in *Anderson v. Liberty*

*Lobby, Inc.,* evidence that is "merely color-able ... or ... not significantly probative" is insufficient to defeat summary judgment. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### III.  LEGAL ANALYSIS

#### 1.  Threshold Issues

#### A.  Whether the Plaintiff Adequately Pled His Opposition to Discrimination Against Others as a Basis for a Claim of Racial Discrimination Against Him

At the pretrial conference, the defendant objected to the plaintiff's representation, *inter alia,* that he was advancing his discrimination claim, in part, on the theory that his opposition to the discrimination of others, his predominantly African–American staff, resulted in racial discrimination being perpetuated against him personally by the defendant.  The defendant represented that this theory could not properly be asserted because it had not been pled in the plaintiff's complaint and came as an unfair surprise to the defendant on the eve of trial.  The plaintiff rejoined that his complaint specifically included a section titled "Opposition to Discrimination," *see* Compl. ¶¶ 20–28, and his claim for racial discrimination incorporated by reference all of his allegations into his claim of racial discrimination, including his opposition to discrimination against his subordinates, *id.* ¶ 36.  Further, the plaintiff submitted that the Court's December 9, 2008 Memorandum Opinion on the parties' cross-motions for summary judgment reflected that the plaintiff had adequately noticed this theory.  As a result of the dispute, the Court ordered supplemental briefing on the issue of whether the plaintiff's opposition to discrimination had been adequately pled as a basis for his racial discrimination claim.  Both parties submitted written arguments encompassing their respective positions, *see* Wackenhut Services, Inc.'s Response

to Plaintiff's Proposed "Opposition to Discrimination" Claim and Proposed Damages for "Injury to Career and Reputation" at 2;  Plaintiff's [July 20, 2009] Memorandum of Law Regarding Pre–Trial Evidentiary Issues at 2, and made additional oral representations to the Court at the August 10 motions hearing.

Upon review of the parties' positions and the applicable legal authority, the Court finds that the defendant has the stronger position.  While the plaintiff correctly notes that the Court acknowledged the plaintiff's opposition to discrimination theory, *see* Plaintiff's [July 20, 2009] Memorandum of Law Regarding Pre–Trial Evidentiary Issues at 2–3 (citing Dec. 9, 2008 Memorandum Opinion, 590 F.Supp.2d at 57), further review of the plaintiff's complaint reveals that the plaintiff only pled that theory with respect to his retaliation claim, *compare* Compl. ¶¶ 37–38, *with id.* ¶¶ 40–41, and the Court only addressed it in that context, *compare* Dec. 9, 2008 Memorandum Opinion, 590 F.Supp.2d at 69–72, *with id.* at 77–80.

The notice pleading standard, upon which the plaintiff relied in its August 10 oral presentation, only requires a plaintiff to set forth "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), in order to "giv[e] the defendant fair notice of the claim and the grounds upon which it rests." *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  While the plaintiff's complaint meets that standard in that it clearly states claims for racial discrimination and retaliation, among others, it does not indicate that his discrimination claim is premised upon his opposition to discrimination against third parties.  In his complaint, under "Causes of Action," the plaintiff states that his *racial discrimination* claim is premised on several "adverse

employment actions when he was denied his 2003 bonus, stripped of his managerial responsibilities, and constructively discharged because of his race." Compl. ¶ 38. By comparison, he states that his *retaliation* claim is premised on "[a]dverse personnel actions . . . taken against [him] because of his opposition to the racially discriminatory payments and employment practices of [the] [d]efendant," specifically "escalat[ing] . . . after [he] notified [the] [d]efendant that a large group of African[-]American employees under his supervision were continually being compensated at a rate below the federal government's Wage Determination Schedule, unlike their while colleague [sic]." Compl. ¶ 41. "[T]he common law maxim 'expressio unius est exclusio alterius,' . . . . embodies a sensible insight into the customary manner in which language is used to communicate ideas. Simply stated, '[i]t expresses the learning of common experience that generally when people say one thing they do not mean something else.'" *Rosenstein v. City of Dallas*, 901 F.2d 61, 62 n. 2 (5th Cir.1990) (applying the "expressio unius est exclusio alterius" principle to determine whether a complainant put the defendant on "fair notice" that he made the appropriate request for redress). Where, as here, the plaintiff has demonstrated knowledge of how to plead a proper theory of discrimination, but appears to have deliberately pled that claim such that he excludes by omission other theories, his complaint should not be read as having pled the omitted theories. *Cf. Ali v. Dist. of Columbia*, 278 F.3d 1, 8 (D.C.Cir.2002) (declining to construe a reference to a statute in the plaintiff's opposition to the defendant's request for dismissal as a constructive amendment of the plaintiff's complaint so as to create a claim against the defendant under that statute).

Contrary to the plaintiff's urging at the August 10 hearing, his "incorporation by reference" language does not broaden the theories upon which his claim rests; it merely points to the specific allegations, and the inferences that flow reasonably from those allegations upon which the claim relies. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (finding that "the complaint leaves no doubt [upon which factual descriptions the] plaintiffs rest their . . . claim," despite "a few stray statements" and "legal conclusions" that "rest[ ] on the prior allegations"). Nor does the parties' Joint Pretrial Statement give the defendant any notice of this theory. Under the heading of "Harris' Claims," the joint submission reads:

> Plaintiff claims Defendant subjected him to unlawful and intentional discrimination based on his race (African American) when Defendant demoted him, stripped him of his supervisory responsibilities, his title, his duties and responsibilities, his staff, his office, and moved him to a different location to be a Proposal Writer in violation of D.C.Code § 2–1402.11(a)(1)(2001).

Joint Pretrial Statement at 3. Further, as the defendant points out in its written briefing, Wackenhut Services, Inc.'s Response to Plaintiff's Proposed "Opposition to Discrimination" Claim and Proposed Damages for "Injury to Career and Reputation" at 2, the Human Rights Act does not appear to permit such a theory as the basis for a discrimination claim; instead, expressly recognizing a claim for "coercion or retaliation" upon such allegations. *Compare* D.C.Code § 2–1402.61 (claim for coercion or retaliation), *with* D.C.Code § 2–1402.11 (prohibitions against employment discrimination), *and* § 2–1403.16 (private cause of action for unlawful discriminatory practice). Therefore, because the plaintiff included his "opposition to discrimination" theory specifically as part of his retaliation claim, but did not include it

as part of his discrimination claim, the Court cannot reasonably presume he was theorizing one thing, but intended another. In any event, even if the Court could conclude that the defendant was put on adequate notice that the opposition to discrimination against others theory was being pled as part of the plaintiff's discrimination claim, the theory would fail as it is not cognizable as a discrimination claim under the Human Rights Act.

### B. Admissibility of Stray Comments by High–Level Wackenhut Executives

The plaintiff relies on several alleged comments by high-level Wackenhut executives as evidence of the racial discrimination against him, including: (1) Jack Faulkner's indication that the money was "too good" at Wackenhut for the plaintiff to leave; (2) Larry Luper's impression of Porky Pig's stutter in ridiculing the plaintiff's manner of speech; (3) Mr. Luper's riddle referring to a "black electrician" as an "ohm-boy;" (4) Michael Gallagher's "black bitch" remark; (5) David Foley's laughter when the plaintiff was explaining his employment responsibilities during a conference call; and (6) James Long's comment that another African–American lived in the "ghetto." *See* Dec. 9, 2008 Memorandum Opinion, 590 F.Supp.2d at at 61–64. The plaintiff views the statements as probative of racial discrimination against him because they were allegedly "made by Wackenhut's highest level officials" and "relate to the issue of race discrimination and a rampant and pervasive racial environment." Plaintiff's Opposition To Wackenhut Services, Inc.'s Motion In Limine To Exclude Evidence Of Alleged Stray Remarks To Support Plaintiff's Discrimination Claim at 4. The defendant, opposing the admissibility of these statements on the ground that they are stray comments that are unrelated to either the decisionmakers in this case or too temporally remote to be probative, seeks their exclusion. *See generally* Defendant's Motion In Limine To Exclude Evidence Of Alleged Stray Remarks To Support Plaintiff's Discrimination Claim ("Def.'s Mot. Re: Statements").[5]

5. In addition to the oral positions taken by the parties at the August 10, 2009 motion hearing, the Court considered the following submissions relating to this motion: Defendant's Motion In Limine To Exclude Evidence Of Alleged Stray Remarks To Support Plaintiff's Discrimination Claim ("Def.'s Mot. Re: Statements"); Plaintiff's Opposition To Wackenhut Services, Inc.'s Motion In Limine To Exclude Evidence Of Alleged Stray Remarks To Support Plaintiff's Discrimination Claim; the defendant's Reply To Harris' Opposition To Wackenhut Services, Inc.'s Motion In Limine To Exclude Evidence Of Alleged Stray Remarks To Support Plaintiff's Discrimination Claim; and Wackenhut Services, Inc.'s Second Supplemental Brief Regarding Pending Evidentiary Issues.

On August 12, 2009, the plaintiff also filed a motion seeking the Court's reconsideration of its preliminary determination, expressed at the August 10 hearing, that the comments by Mr. Foley, Mr. Long, and Mr. Gallagher would be admissible, but the statements by Mr. Luper and Mr. Faulkner would be inadmissible. *See generally* Plaintiff's Motion And Memorandum Regarding Discriminatory Remarks Made By Decision Makers And Influential High Ranking Officials As Evidence Of Discriminatory Intent. It is the plaintiff's position that all of the comments are admissible as circumstantial evidence of discriminatory intent of "officials who influence[d] the decision maker[s]." *Id.* at 1–2. The defendant opposes the motion. *See generally* Wackenhut Services, Inc.'s Response In Opposition To Plaintiff's Motion Regarding Discriminatory Remarks Made By Decision Makers And Influential High Ranking Officials As Evidence Of Discriminatory Intent.

The Court agrees with the plaintiff that stray remarks may be probative of discriminatory intent, just not necessarily the remarks the plaintiff seeks to introduce in this case. For the reasons set forth in this Supplemental Memorandum Opinion, the Court has finalized its ruling on the defendant's motion in limine upon review of the governing legal

■ Upon careful review of the governing legal standards, as well as the wording and context of each comment, the Court must grant in part and deny in part the defendant's motion to exclude the several statements. The general rule is that " 'stray remarks,' " *i.e.*, comments that are not tied to the alleged adverse employment action, "might be probative of discrimination, but are not sufficient as direct evidence of discrimination." *Isse v. American Univ.*, 540 F.Supp.2d 9, 30 (D.D.C. 2008); *see Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir.2009) (observing that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be"). Applying that principle here, the Court concludes that the stray comments made by Mr. Luper, Mr. Gallagher, and Mr. Faulkner, all non-decisionmakers, are inadmissible.[6] This ruling is called for because all of these statements are irrelevant and more prejudicial than probative. Primarily, the Court's conclusion rests on the fact that the plaintiff has failed to proffer evidence from which a jury could reasonably infer that the speakers had any influence, or even had any input, on the decision to transfer the plaintiff. *See Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 869 (D.C.1997) (stating that "statements by nondecision makers are insufficient to meet plaintiff's threshold burden, as are stray remarks in the workplace by those not involved in the decisionmaking process" because even "the discriminatory animus of an employee's supervisor, who is not involved in the [adverse employment] decision . . . cannot, as a matter of law, be imputed to the ultimate decisionmaker"). Further, no jury could reasonable infer that the comments about the amount of money the plaintiff was making and the stuttering imitation by Mr. Faulkner and Mr. Luper, respectively, had anything to do with the plaintiff's race. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345–46 (7th Cir.1999) (find-

---

authority, but not reaching the conclusion urged by the plaintiff, because no evidence indicates that the non-decisionmakers had any influence over the decision to transfer the plaintiff. Because the plaintiff did not assert any Federal Rule of Civil Procedure upon which reconsideration of the Court's decision is being sought, the Court assumes that the plaintiff seeks reconsideration pursuant to Rule 59, which permits a party to file "[a] motion to alter or amend a judgment." Fed. R.Civ.P. 59(e). The plaintiff has not met that standard because he has not identified "an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (citations omitted). Accordingly, the plaintiff's motion for reconsideration must be denied.

6. These statements include the alleged statements regarding the income the plaintiff was receiving by Mr. Faulkner and the stuttering imitation of the plaintiff by Mr. Luper. No racial context can reasonably be inferred from these statements, and they therefore have no relevance in proving racial discrimination. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345–46 (7th Cir.1999). The motion is also granted with respect to the alleged riddle told my Mr. Luper and the "black bitch" statement by Mr. Gallagher. Viewing these two statements in the light most favorable to the plaintiff, the Court assumes that the riddle and statement have racial connotations. Nonetheless, even though Mr. Luper's riddle may have been communicated to Mr. Foley (one of the two decisionmakers), both statements were made over a year prior to the plaintiff's transfer and by non-decisionmakers. The plaintiff has offered no evidence from which a reasonable jury could infer that either Mr. Luper or Mr. Gallagher influenced the plaintiff's transfer, that either statement related to the plaintiff's employment, or that the statements were considered by the decisionmakers when the decision to transfer the plaintiff was made. *See Hollins v. Fed. Nat'l Mortgage Ass'n*, 760 A.2d 563, 576 (D.C.2000).

ing that coarse language and comments that do not "implicate negative attitudes toward African–Americans .... cannot be said with any degree of certainty" to possess a discriminatory racial character); *Nichols v. Truscott*, 424 F.Supp.2d 124, 137 (D.D.C.2006) (finding that allegations of racial and gender discrimination cannot survive where there is no "inference of discrimination" based on any protected status).

While the plaintiff urges that the Court should look to the Fifth Circuit's decision in *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602 (5th Cir. 2007) as support for admitting the above statements, the Court is not persuaded that *Arismendez* aids the plaintiff's position. While the *Arismendez* court did not just limit its evaluation of the evidence to statements made by the person " 'who officially made the decision,' " *i.e.*, the " 'titular decisionmaker,' " but also evaluated statements by the plaintiff's immediate supervisor " 'who actually ... caused the decision to be made,' " *id.* at 608, factors present in that case which led to that result are not present here, rendering the Fifth Circuit's consideration of the immediate supervisor's statements of no value to the plaintiff. Here, there is no evidence from which this Court could adduce, like the Fifth Circuit in *Arismendez* did, that either Mr. Luper, Mr. Gallagher, or Mr. Faulkner "provided all [ (or for that matter any of) ] the information [Mr. Foley or Mr. Long (the two decisionmakers) needed] ... in order to make the termination decision," "initiated the 'paperwork,' " "signed the papers to terminate [the plaintiff's] employment," or "communicated with [the company's] human resources department regarding [the plaintiff's] termination." *Id.; see Hollins v. Fed. Nat'l Mortgage Ass'n*, 760 A.2d 563, 576 (D.C.2000) ("One cannot infer from [stray racial] comments that discrimination was a factor in [the plaintiff's] discharge, since [the comments]

were not directed at him and were not made *by decision-makers* in a context *related to the decision-making process.*" (emphasis added)); *see also Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13–15 (1st Cir.1998), *cited in Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1080 (D.C.Cir.1999) (finding no evidence of discrimination where there was no evidence that the plaintiff's supervisors, who allegedly made discriminatory remarks, actually participated in employer's discharge decisions); *cf. Forman v. Small*, 271 F.3d 285, 293 (D.C.Cir.2001) ("[W]hen decision makers, or those who have input into the decision, express such discriminatory feelings around the relevant time in regard to the adverse employment action complained of, 'then it may be possible to infer that the decision makers were influenced by those feelings in making their decisions.' "); *Morgan v. Fed. Home Loan Mortgage Corp.*, 197 F.R.D. 12, 16–17 (D.D.C.2000) ("[P]roving a racial incident somewhere in a corporation's work life is hardly probative that the other persons who work for that corporation share the discriminatory attitude of the person whose behavior or statements provoked the incident."). Mr. Luper's, Mr. Gallagher's, and Mr. Faulkner's status as high-level corporate officers are not alone enough sufficient to merit the admission of their statements. Indeed, even if the plaintiff had submitted evidence that either Mr. Foley or Mr. Long discussed the comments, the plaintiff's performance, or the transfer decision with any of these non-decisionmaker speakers, without evidence that the speakers in some way actually influenced the plaintiff's transfer, the statements are not material. *See, e.g., Blackman*, 694 A.2d at 870–71 (refusing to infer that the plaintiff's immediate supervisor, who allegedly displayed a discriminatory animus towards the plaintiff, influenced the termination decision even where the immediate supervi-

sor conferred at least three times with ultimate decisionmaker and "discussed the circumstances surrounding the [plaintiff's request for] leave," which was the basis for the termination by the decisionmaker).[7]

■ However, with respect to Mr. Long's comment and Mr. Foley's laughter, the decisionmakers in this case, the motion must be denied. While Mr. Long's comment could be probative of racial discrimination, if a discriminatory inference is reasonable based on the evidence adduced by the plaintiff, no such inference, without more on the part of Mr. Foley, could reasonably be reached concerning Mr. Foley's laughter. Nonetheless, it cannot be said to be totally irrelevant.[8]

7. The Court did not explicitly address at the August 10, 2009 hearing whether the jury could consider evidence of alleged discriminatory acts that the Court determined to be inactionable because they were outside the one-year statute of limitations, one of the issues upon which the Court sought supplemental briefing. This evidence included the plaintiff's dissatisfaction with: (1) his assignment to the Camp Springs office given its more remote location and dilapidated condition; (2) his receipt of previously driven company cars; (3) the fact that exclusive club and organizational memberships were not provided to him; (4) his inability to purchase small items without prior approval; and (5) the amount of his holiday budget allocation. Dec. 9, 2008 Memorandum Opinion, 590 F.Supp.2d at 67–68. However, the Court did engage the parties in a colloquy regarding the plaintiff's position that this evidence is admissible at trial as evidence of the defendant's pattern-and-practice of racial discrimination. However, the standard that governs the admissibility of pattern-and-practice evidence has not been satisfied in this case because the record is devoid of any evidence that "racial discrimination was the [defendant's] standard operating procedure—the regular rather than the unusual practice," *Bazemore v. Friday*, 478 U.S. 385, 398, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (citation omitted). By the plaintiff's own admission, he was hired, promoted, and received pay increases and bonuses from at least one of the two decisionmakers to whom he attributes his transfer. While this evidence does not negate all likelihood that the decision was racially motivated, it is probative counter-evidence to the claim of discrimination, particularly of any systemic discrimination. *See Czekalski v. Peters*, 475 F.3d 360, 368–69 (D.C.Cir.2007).

Moreover, based upon the same reasoning that compels the Court to deem inadmissible stray race-related and non-race-related comments by non-decisionmakers, so too is the evidence falling outside the one-year statute of limitations inadmissible. First, there is no indication that the alleged actions complained of by the plaintiff were indicative of race-based discrimination given that the plaintiff did not dispute that the defendant treated him the same as white employees were treated, *compare* Wackenhut Services, Inc.'s Statement Of Material Facts As To Which No Genuine Issue Exists ¶ 17 (the plaintiff's white successor did not have club membership for three-year period of time), ¶ 40 (all employees, regardless of race, were subject to the same physical working conditions), ¶ 49 (the plaintiff's white successor assigned the same vehicle as the plaintiff), ¶ 52 (the plaintiff's white successor had same purchasing limitations as the plaintiff), ¶ 54 (the plaintiff's white successor has same holiday budget as the plaintiff), *with* Material Facts Disputed By Plaintiff at 1–3, so it is difficult to see how this evidence is relevant for the purpose of establishing racial discrimination, Fed.R.Evid. 402. Second, the absence of any temporal relation or proof of similar motivation between the alleged bad acts and the plaintiff's transfer also weighs against a finding that such evidence is admissible as prior bad acts. *See Coles v. Perry*, 217 F.R.D. 1, 9–10 & n. 5 (D.D.C.2003) ("[O]nly discrimination or retaliation of the same character and type as that [which] is alleged is probative. To establish that a prior discriminatory act is probative of the intention or motive of the defendant, there must be some reason to believe that his motivation or intention in the acts in question was similar to his motivation or intention on the prior occasion."); *cf. Williams v. Johanns*, 245 F.R.D. 10, 13 (D.D.C.2007) (in determining the limits of discoverable evidence, the Court observed that "[t]o establish similar motivation, discovery of other like discriminatory acts must be related in time and place").

8. The defendant orally supplemented its motion at the hearing stating that it was also seeking the exclusion of Mr. Foley's alleged

### 2. Whether the Defendant is Entitled to Judgment As a Matter of Law on the Plaintiff's Racial Discrimination Claim

### A. The Plaintiff's Evidence of Racial Discrimination

At the August 10 motion hearing, when asked to state all the evidence upon which he will rely at trial to support of his claim of racial discrimination and to refute the non-discriminatory motive offered by the defendant as the reason it was decided to transfer the plaintiff to another position, the plaintiff's counsel stated he would present the following:

1. His employment background prior to his tenure at Wackenhut;

2. His tenure at Wackenhut, including which decisionmakers were involved with his hiring and any representations provided to him as to why those decisionmakers were hiring him;

3. His advancement and promotions while employed by the defendant;

4. His receipt of only positive performance appraisals and evaluations;

5. His salary increases;

6. The profits generated by his job performance;

7. Letters from defendant's customers and employees praising the plaintiff's job performance;

8. The plaintiff's successful completion of contracts to which he was assigned;

9. The substandard conditions of the building where his offices were located;

10. The change of his supervisor;

11. Comments made by Wackenhut high-level executives allegedly uttered during the fall of 2002 through the fall of 2003, namely, Mr. Gallagher's "black bitch" remark, Mr. Foley's laughter when the plaintiff was trying to explain his duties, and Mr. Long's ghetto reference; [9]

12. The dissatisfactory performance of the Department of Justice contract, which in part formed the basis for the defendant's proffered legitimate rationale for the plaintiff's transfer, including who staffed and managed the contract, how the staff and managers performed, and the oversight role assumed by Wackenhut executives working out of the company's Palm Beach, Florida, office;

13. A memorandum drafted by the plaintiff addressing his belief that

laughter during a telephone conference call with the plaintiff and possibly others, in response to the plaintiff's attempt to explain his employment responsibilities. *See* Def.'s Mem., Ex. 3 (Deposition of Edward Harris) at 110–11. Despite the Court's concerns that this conduct had no racial implications, because it was an act that allegedly occurred in the fall of 2003 by a decisionmaker only a few months prior to the transfer decision communicated to the plaintiff in December 2003, the Court cannot find that it is completely irrelevant.

9. At the August 10 hearing, the Court tentatively ruled that any stray comment attribut-

able to a nondecisionmaker would be presumed relevant and admissible if it could be inferred that either Mr. Foley or Mr. Long, the decisionmakers, learned of the comment. It was based on this ruling that the plaintiff represented that he would rely on only these three statements at trial, although it remained his position that all comments by high-level Wackenhut executives should be admissible to establish racial discrimination. Upon subsequent review of the applicable legal authority, however, the Court has revised its assessment of the admissibility of those comments as set forth in this memorandum opinion.

his staff was receiving inadequate compensation and substandard equipment from the company (which was primarily comprised of African–Americans); [10]

14. Details of the December 2003 meeting at which the decisionmakers informed the plaintiff of his impending transfer to a contract proposal writing position;

15. The fact that the plaintiff's replacement and that person's successor were both white;

16. The fact that the proposal writer position went unfulfilled after the plaintiff terminated his employment;

17. The fact that all decisionmakers were white; and

18. The fact that the plaintiff's predominately African–American staff was paid less than all other predominately white staff at the company.

## B. Legal Sufficiency of the Plaintiff's Evidence of Racial Discrimination

▮▮▮ The plaintiff's sole remaining claim of racial discrimination is pled under the Human Rights Act, which, in rele-

vant part, forbids an employer from "discriminat[ing] against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion." D.C.Code § 2–1402.11. "[T]he two essential elements of a [racial] discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race...." [11] *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C.Cir.2008). Where, as here, the plaintiff has proffered no direct evidence of intentional discrimination by the alleged decisionmakers,[12] Mr. Long and Mr. Foley, the claims are evaluated under the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Mungin,* 116 F.3d 1549, 1553 (D.C.Cir.1997) (applying the *McDonnell Douglas* test to claims brought, in part, under the D.C. Human Rights Act). At the first stage of this framework, the plaintiff bears the burden of "establish[ing] a prima facie case of discrimination by a preponderance of the evidence." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. This burden requires the plaintiff to show that he: "(1) [is a] member[ ] [of] a protected group; (2) [is] qualifi[ed] for the job in question; (3) [was subjected to] an adverse employ-

---

10. The Court deferred ruling on the admissibility of this memorandum based on the plaintiff's representation that he can establish its relevance to issues that will arise as part of his race discrimination claim, although he initially relied upon it solely with respect to his retaliation claim, which is no longer part of this case.

11. Courts, in interpreting alleged violations of the Human Rights Act, "have generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 [or "Title VII"] for guidance and have adopted those precedents when appropriate." *Benefits Commc'n Corp. v. Klieforth,* 642 A.2d 1299, 1301 (D.C.1994); *see also Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1553

(D.C.Cir.1997) ("The burdens of persuasion and production for claims raised under ... the D.C. law [currently codified at D.C.Code § 2–1402.11] are identical to those for claims alleging discriminatory treatment in violation of Title VII."). The Court will therefore rely on those authorities as appropriate.

12. "Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference. Such evidence includes any statement or written document showing a discriminatory motive on its face." *Lemmons,* 431 F.Supp.2d at 86 (internal quotation marks, citations, emphasis and ellipsis omitted).

ment action; and (4) [the existence of] circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citations omitted). "If the plaintiff establishes a prima facie case of discrimination, the burden shifts" to the second stage of the framework, where "the defendant employer [must] produce evidence" that the adverse employment action occurred "for a legitimate, nondiscriminatory reason." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C.Cir.2007) (quoting *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (internal quotations omitted)). Once "the employer offers a non-discriminatory justification for its actions, the *McDonnell Douglas* framework falls away," *Vickers v. Powell*, 493 F.3d 186, 195 (D.C.Cir.2007), and the Court is left to question whether the plaintiff can show that the employer's proffered reason was merely "pretextual," and designed to "shield[ ] [its true] discriminatory motives," *Jackson*, 496 F.3d at 707 (citing *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C.Cir.2005)). Thus, where as here, the defendant has offered a legitimate, non-discriminatory rationale for its decision, the framework essentially dissolves, and a court's analysis should proceed to what is the ultimate question and the third stage of the framework: whether "a reasonable inference of discriminat[ory action]" can be derived from the evidence as a whole. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C.Cir.2009) ("Given that the [the defendant] asserted its legitimate non-retaliatory explanation for the [the plaintiff's negative job performance] evaluation—that it reflected an honest assessment of [the plaintiff's] performance—the district court should have proceeded to the ultimate issue of retaliation *vel non* instead of evalu-

ating whether [the plaintiff] made out a prima face case."). In evaluating the plaintiff's ultimate burden, the Court's focus is on whether a jury evaluating all of the evidence could reasonably infer racial discrimination on the part of the employer. *Cf. Hardin*, 167 F.3d at 345–46 (finding that coarse language and comments that did not "implicate negative attitudes toward African–Americans .... cannot be said with any degree of certainty" to possess a discriminatory character so as to establish a hostile work environment).

■ Evaluating the admissible evidence proffered by the plaintiff in this case, and the burden that the plaintiff must carry to succeed at trial, the Court finds that it can arrive at only one reasonable conclusion: the plaintiff cannot establish racial discrimination as a matter of law. Even when viewing all the evidence in the light most favorable to the plaintiff, as the Court must, the record indicates, at most, that some high-level Wackenhut executives may have made several insensitive racial comments to the plaintiff or in his presence at various times during his tenure with the company. Despite these remarks, it cannot be said that either of the decisionmakers, Mr. Foley and Mr. Long, were more likely than not to have acted with racial animus towards the plaintiff when they decided to transfer him to another position. The bulk of the evidence the plaintiff seeks to use to suggest otherwise—namely, items 1–10, 12, 14, 16 listed on pages 17–19 of this opinion—is devoid of any racial connotations, let alone project any discriminatory intent or motive, and the plaintiff's own speculation that race was the underlying reason why matter that appear race neutral were nonetheless done or said for racial reasons is of no value.[13] Items 13 and 18 of the plaintiff's

---

**13.** Although the plaintiff seeks to prove that his predominately African–American staff was being paid less than white staff elsewhere in

the company, this evidence (even assuming that it is admissible) is irrelevant to the ultimate issue of whether the plaintiff, a supervi-

proffered evidence relate to the race of his subordinates, and although the plaintiff is also African–American, such evidence is irrelevant on the question of whether he was personally subjected to racial discrimination. Similarly, items 15 and 17 of the plaintiff's proffered evidence, while relevant, are not alone decisive. The fact that the two decisionmakers were white, as well as his two successors, while relevant at the first stage of the *McDonnell Douglas* burden-shifting framework to establish a presumption of racial discrimination, when unaccompanied by any additional evidence that the decisionmakers acted with racial animus or out of a desire to give preferences to persons of the white race over the plaintiff, is of little value on the ultimate question of whether racial discrimination was the actual reason for the decision to transfer the plaintiff, especially when countered by the defendant's proffer of a legitimate, non-discriminatory rationale for its decision. In fact, the only factual proffer submitted by the plaintiff that can be attributed to a decisionmaker (Mr. Long) and reasonably can be inferred to have a racial context, *i.e.*, item 11, *see Hardin*, 167 F.3d at 345–46, is a comment uttered in the plaintiff's presence, but not directed at him, which no reasonable juror could conclude demonstrates that the reason given for the decision to transfer the plaintiff

was pretextual and designed to conceal the true reason for the transfer, *i.e.*, racial discrimination.

The Court reaches this conclusion because the record is completely devoid of any evidence that Mr. Foley's (the other decisionmaker) laughter when the plaintiff tried to explain his employment responsibilities had anything to do with the fact that the plaintiff is African–American. *See* Def.'s Mem., Ex. 3 (Deposition of Edward Harris) at 110–11. And, the evidence does not reasonably lead to the conclusion that Mr. Long's "ghetto" remark evidenced that he harbored and acted upon any illicit racial animus towards the plaintiff.[14] His comment was not even directed at the plaintiff, but rather at Mr. Allen, another African–American employee, and therefore it was not made "in regard to the adverse employment action complained of" by the plaintiff. *Forman*, 271 F.3d at 293. While the comment *may* have some minimal degree of relevancy on the question of Mr. Long's views of African–Americans as a general matter (which even viewing the evidence in the light most favorable to the plaintiff is a stretch), the record is undisputed that Mr. Long was referring to Mr. Allen's residence being located in the most exclusive neighborhood in Aiken, South Carolina. Def.'s Mem., Ex. 3 (Deposition

---

sor, was being discriminated against when the decision was made to transfer him. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) ("Under Title VII, a finding of discrimination requires a comparison of otherwise similarly situated persons who are in different groups by reason of certain characteristics provided by statute. For this reason, we have described as 'nonsensical' the comparison of the racial composition of different classes of job categories in determining whether there existed disparate impact discrimination with respect to a particular job category." (internal citation omitted)).

14. Even if the Court could have admitted into evidence the additional stray comments by

the nondecisionmakers encompassed in item 11, which the plaintiff relies upon as support for his position that he was discriminated against based on his race, the plaintiff would still have failed to satisfy his burden, as none of the comments relate to the transfer decision. *Forman*, 271 F.3d at 293 ("[W]hen decision makers, or those who have input into the decision, express such discriminatory feelings around the relevant time *in regard to the adverse employment action complained of*, 'then it may be possible to infer that the decision makers were influenced by those feelings in making their decisions.'" (emphasis added)).

of Edward Harris) at 115, Ex. 5 (Deposition of Richard Allen) at. 23–24. Thus, apart from the plaintiff's "naked speculation concerning the motivation for [the] defendant's adverse employment decision," Mr. Long's isolated statement, which would appear to have been made in jest, albeit maybe in poor taste, cannot reasonably be inferred as indicative of racial animus *towards the plaintiff* (or anyone else). *Hester v. BIC Corp.,* 225 F.3d 178, 185 (2d Cir.2000); *cf. Alexis v. McDonald's Rests. Of Mass., Inc.,* 67 F.3d 341 (1st Cir.1995), *cited in Hester,* 225 F.3d at 185 (observing that "[a]lthough [the defendant's conduct] ... may be entirely compatible with a race-based animus [by the causal observer], there [must be] ... foundation for an inference that [the defendant] harbored a racial animus toward [the plaintiff] or anyone else" (some alterations added)). Taken together, "the nature of the alleged statements, the circumstances surrounding those statements and the lack of additional evidence of discrimination" lead the Court to the conclusion that the entirety of plaintiff's evidence "cannot support an inference of discrimination." *Staples v. Pepsi–Cola Gen. Bottlers, Inc.,* 312 F.3d 294, 301 (7th Cir.2002) (affirming the district court's grant of judgment for the employer where plaintiff's allegations rested upon allegedly pretextual negative performance rating and a comment by a supervisor consulted on the termination decision who indicated that the company " 'already have one black manager' when [the plaintiff] inquired about the possibility of a promotion," because the evaluation was not inferably suspicious and the comment was "neutral on [its] face, unrelated to the employment action at issue and not supported by additional evidence discrimination" or illicit motive). Accordingly, the evidence proffered by the plaintiff does not support his position and the Court is therefore compelled to grant the defendant summary judgment on the plaintiff's Human Rights Act discrimination claim.

## IV. CONCLUSION

There is no doubt that throughout the many years this case has been pending, the plaintiff has stood ardent in his view that he was the subject of illegal racial discrimination. The record is uncontroverted that, at minimum, he worked in an environment where his co-workers made jokes, sometimes as the plaintiff's expense, which he subjectively found offensive. The question, however, is not whether he was content with his working environment or whether his experience was devoid of any negative remarks regarding race; the question is whether the plaintiff has made out a sustainable claim of racial discrimination as a matter of law. Viewing the facts in the light most favorable to the plaintiff, there is, at most, scant evidence of racial pretext for the legitimate, non-discriminatory reason offered by the defendant for the decision to transfer the plaintiff to another position. On this record, the Court must conclude that the plaintiff cannot "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination," *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089, and therefore it must award summary judgment to the defendant on the plaintiff's Human Rights Act discrimination claim.[15]

---

15. A Supplemental Order consistent with this Supplemental Memorandum Opinion was issued on August 14, 2009.