United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 23, 2007**

Charles R. Fulbruge III
Clerk

REVISED July 26, 2007

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

06-40593
_____

MARILUZ G. ARISMENDEZ,

Plaintiff-Appellant,

v.

NIGHTINGALE HOME HEALTH CARE, INC., doing business as AAA
Medical Oxygen Supply, also known as and formerly known as
Rotech Healthcare Inc., also known as and formerly known as
Professional Respiratory Home Healthcare Inc., also known
as and formerly known as ABBA Medical Equipment Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

Before JONES, Chief Judge, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

The Plaintiff-Appellant, Mariluz Arismendez, brought suit
against her employer, Nightingale Home Health Care, alleging gender
discrimination pursuant to the Texas Commission on Human Rights Act
(TCHRA), Tex. Lab. Code Ann. § 21.001 et seq. The jury found that
Arismendez's pregnancy was a motivating factor in Nightingale's
decision to discharge her and rendered a verdict in favor of
Arismendez. The jury also found that Nightingale (1) did not make

a good faith effort to prevent gender discrimination in the workplace and (2) engaged in the above found discriminatory practice with malice or reckless indifference. The jury awarded damages for back pay and compensatory damages. It also awarded $1,000,000 in punitive damages. Arismendez moved for entry of judgment and Nightingale objected, arguing that the proposed judgment failed to apply a statutory cap on punitive damages. The district court sustained Nightingale's objection and remitted the punitive damages to $200,000. Subsequently, finding insufficient evidence to support the jury verdict, the district court granted Nightingale's motion for judgment as a matter of law. We conclude that the district court erred in finding insufficient evidence and reverse the district court's judgment. Additionally, we conclude that the district court correctly ruled that Texas statutory law does not allow punitive damages in excess of $200,000 in this case and direct the court to reinstate the jury's award of damages and remit the punitive damages to $200,000.

I.   BACKGROUND

Nightingale is in the business of providing oxygen tanks and other medical equipment to homebound patients. In February of 2002, Arismendez began working as a customer service representative for Nightingale at its McAllen branch. McCune was the regional manager in charge of operations in Texas. From the time Arismendez began working in 2002 until February 2003, the McAllen branch operated without a branch manager. During that period, Arismendez

2

often reported to Chris Cruz, the Corpus Christi branch manager.

In November 2002, Arismendez discovered she was pregnant with her third child. She then discussed maternity leave with James Goldstein, Nightingale's area manager for south Texas. Veronica Vela was hired as the McAllen branch manager in February of 2003.

Arismendez began experiencing lower abdominal pain and, on March 24, 2003, saw her physician, who prescribed bedrest and signed a release that excused her from work until her next appointment on April 7. Arismendez's husband delivered the note to Vela at the office. McCune granted Arismendez a leave of absence until April 8. During this time, Arismendez stayed at her home in McAllen. Arismendez called Vela on a daily basis for the first week of leave to assist with any questions about her work. Arismendez also asked Vela about the short-term disability policy. Pursuant to this conversation, Jesus Sanchez, Arismendez's co-worker, brought a disability form to Arismendez. Arismendez's physician completed the disability form on April 2. The doctor restricted Arismendez's physical activity until April 8, 2003. Vela instructed Arismendez's husband to send the completed form directly to the corporate headquarters, and he complied with her instructions.

On April 7, Arismendez had another doctor's appointment. Her physician ordered two additional weeks of bedrest and signed another release that excused her from work until April 21. Once again, her husband delivered the doctor's note to Vela at the

office. Vela, however, claims that she did not receive this note. During this period of leave, Arismendez's husband was away from home working on a job site, and Arismendez stayed at her mother's home in Mexico to obtain help caring for her two young children. Her mother's home did not have a telephone but Arismendez called the office at least two times when Vela was out. During one of the calls, Arismendez heard Sanchez radio Vela and ask if she needed anything from Arismendez. Arismendez told Sanchez that she could not be reached by phone because she was staying with her mother in Reynosa, and Sanchez relayed that information to Vela.

On April 21, Arismendez had a doctor's appointment, during which he ordered fifteen more days of bedrest and signed another work release. Arismendez attempted to deliver the doctor's note to Vela at the office. Vela refused to accept the note and told her she had been terminated several weeks ago. The Employee Separation Report was signed by Vela as the supervisor and dated April 8. The report listed the reasons for the involuntary separation were "excessive sick leave/ job abandonment." Vela also told Arismendez that although Vela knew it was illegal to fire her because she was pregnant, Vela had a "business to run" and "could not take having a pregnant woman in the office."

On May 6, 2004, Arismendez brought a pregnancy discrimination and wrongful termination suit against Nightingale in Texas state court. Nightingale removed it to federal district court. The jury found in favor of Arismendez, awarding $26,150 in back pay damages,

4

$10,000 in compensatory damages, and $1,000,000 in punitive damages. Nightingale objected to the entry of judgment on the plaintiff's motion, asserting a Texas statutory cap on punitive damages. The district court reduced the punitive damage award to $200,000 pursuant to the statutory cap. Nightingale subsequently renewed its motion for judgment as a matter of law, and the district court granted the motion, entering judgment in favor of Nightingale. Arismendez now appeals.

II. ANALYSIS

A. STANDARD OF REVIEW

We review the district court's grant of judgment as a matter of law de novo, applying the same standard as the district court. *Sobley v. Southern Natural Gas Co.,* 210 F.3d 561, 563 (5th Cir. 2000). Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). This Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Additionally, this Court should disregard evidence favorable to the moving party that the jury is not required to believe. *Laxton v. Gap, Inc.*, 333 F.3d 572, 577 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture,* 235 F.3d

5

219, 222 (5th Cir. 2000)).  We must give "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses."  *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)).  There must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant.  *Id.*

## B.  Discrimination

Arismendez brought suit pursuant to the TCHRA, which prohibits an employer from, among other things, discharging an employee because of her gender.  Tex. Lab. Code Ann. § 21.051.  Section 21.051(1) provides that "[a]n employer commits an unlawful employment practice if because of . . . sex . . .the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with . . . privileges of employment."  The TCHRA further explains that sex discrimination includes discrimination "because of or on the basis of pregnancy." § 21.106(a).

A stated purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." Tex. Lab. Code § 21.001(1)*; see also Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex. 2001). Accordingly, "'analogous federal statutes and the cases interpreting them guide' the reading of the statute."  *Pineda v. United Parcel Serv., Inc.,* 360 F.3d

6

483, 487 (5th Cir. 2004) (quoting *Quantum*, 47 S.W.3d at 476). However, the TCHRA and Title VII differ in their required proof of the employer's motivation for the unlawful employment practice. Under the Texas statute, to establish an unlawful employment practice, Arismendez need only prove that discrimination was "a motivating factor" in the employer's decision, *Quantum,* 47 S.W.3d at 480, rather than a "but for" cause as Title VII requires.[1] *Pineda,* 360 F.3d at 487. However, if an employer demonstrates that it "would have taken the same action in the absence of the impermissible motivating factor," then a court may grant declaratory or injunctive relief but may *not* award damages. § 21.125(b).

Here, the jury specifically found that Arismendez's pregnancy was a motivating factor in the employer's decision to discharge her. Arismendez argues that the district court erred in finding insufficient evidence to support the verdict. She had the burden of persuading the jury either by direct evidence of discrimination or by an indirect method of proof, which is the pretext method set forth in *McDonnell Douglas*.[2] *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 309 (5th Cir. 2004).

---

[1] *See* § 21.125(a) ("an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice. . . .").

[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Nightingale responds that Arismendez failed to establish a prima facie case of discrimination because she did not present evidence that she was treated less favorably than employees outside her protected class, "non-pregnant employees who missed a comparable amount of work." Nightingale further asserts that Arismendez "leaps beyond her initial burden and centers her attack instead on her second burden, presuming that this Court will ignore the fact that she never established a prima facie case to even reach the burden-shifting aspects of discrimination law." Nightingale is mistaken. Because this case was "fully tried on the merits," the *McDonnell Douglas* burden-shifting framework "drops from the case." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 713-14, 715 (1983) (internal quotation marks and citations omitted). Indeed, after trial, "the sufficiency of the prima facie case as such 'is no longer relevant.'" *Russell,* 235 F.3d at 224 n.5 (*Aikens,* 460 U.S. at 715).

Arismendez argues that the comments Vela made while terminating her constitute direct evidence of discrimination. Arismendez testified that Vela said that she knew it was illegal to terminate Arismendez because of Arismendez's pregnancy. Nonetheless, Vela said she had a business to run and could not handle having a pregnant woman in the office.[3] The district court

[3] Vela denies making these comments. Nonetheless, we must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence.

8

ruled that because Vela "did not exercise any authority over McCune's decision to terminate Plaintiff, Vela's comments amount to nothing more than stray remarks." We disagree. This Court has explained that "remarks may serve as sufficient evidence of . . . discrimination if the offered comments are: 1) [pregnancy] related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996).[4] The only dispute is whether Vela had the authority to terminate Arismendez. Nightingale's position is that McCune was the individual that had the authority to terminate Arismendez. However, this Court looks "to who actually made the decision or caused the decision to be made, not simply to who officially made the decision." *Russell,* 235 F.3d at 227. Thus, "if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker," the worker's discriminatory animus may be attributed to the employer. *Id.*

Here, viewing the evidence in the light most favorable to the non-movant, the evidence is sufficient for a jury to find that Vela

---

*Reeves*, 530 U.S. at 150.

[4] After the Supreme Court's holding in *Reeves,* 530 U.S. 133, "[w]e continue to apply the *CSC Logic* test when a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." *Laxton v. Gap, Inc.,* 333 F.3d 572, 583 n.4 (5th Cir. 2003).

exerted influence over the decision to terminate Arismendez. Vela was Arismendez's direct supervisor. Vela signed the papers to terminate Arismendez's employment. There was evidence that Arismendez's husband hand delivered a doctor's note to Vela that extended the period of bedrest. That note was not in Arismendez's file, and McCune was never made aware of it. McCune testified that he would have considered the circumstances regarding Arismendez's bedrest if he had been made aware. McCune described Arismendez as a superior employee and a key person in the office. Vela communicated with Nightingale's human resources department regarding terminating Arismendez. McCune testified that Vela initiated the "paperwork" to terminate Arismendez. Indeed, McCune admitted that Vela provided all the information that he had in order to make the termination decision. Because the jury could therefore conclude that McCune conducted no independent investigation, the "causal link" between Vela's discriminatory animus and Arismendez's termination was not broken. *Long v. Eastfield Coll.,* 88 F.3d 300, 307 (5th Cir. 1996). "Whatever the formal hierarchy of [Nightingale] might be, the jury could reasonably find that [Vela] contributed significantly to the termination decision officially made by [McCune]." *Russell,* 235 F.3d at 228.

Thus, we conclude that the remarks made by Vela at the time of Arismendez's termination serve as direct evidence of pregnancy

discrimination. This case boils down to a question of credibility, and the jury believed Arismendez over Vela. There is more than a mere scintilla of evidence to support the jury's verdict that Arismendez's pregnancy was a motivating factor in the employer's decision to terminate Arismendez. Tex. Lab. Code § 21.125(a).

Nonetheless, as previously set forth, if an employer can show that it would have taken the same action in the absence of any discriminatory animus, then no damages may be awarded. Tex. Lab. Code § 21.125(b). Nightingale argues that, in any event, it would have terminated Arismendez based on either her "job abandonment" or "excessive absenteeism." Those terms are explained in the Employee Handbook and are the reasons listed for Arismendez's termination in her Employee Separation Report.

The Employee Handbook defines "Job Abandonment" as follows: "Failure to report an absence for three (3) consecutive days will be considered a voluntary resignation." It is undisputed that Arismendez reported her absence through April 7. Indeed, it is undisputed that McCune granted her a leave of absence until April 8. There is evidence that, on April 7, Arismendez's husband delivered a doctor's note prescribing bedrest for Arismendez through April 22. Pursuant to a hypothetical question, Vela admitted that such a notification would be an acceptable way to report an absence. The Employee Separation Report lists the termination date as April 8. Drawing all reasonable inferences from the evidence in favor of Arismendez, the evidence is legally

11

sufficient to show that Arismendez did not fail to report her absences.  Thus, Nightingale has failed to demonstrate that it would have terminated her based on job abandonment.

With respect to the "excessive absenteeism" basis for termination, the Employee Handbook defines an occurrence as follows:

> In most cases, each separate incident when you are absent, tardy or leave work early.  However, an absence of consecutive workdays caused by the same reason will be treated as a single occurrence.  Any absence of 3 or more workdays for the same *medical reason* will require a return to work authorization from a doctor.  Failure to produce this note will result in each absence being counted as a separate occurrence.

(emphasis in original).  The handbook provides that if an employee had six occurrences in a year, the employee should receive an "Initial Counseling Warning."  It further provides that an employee will be terminated after 9 occurrences in a 12-month period.  It is undisputed that Arismendez's absence consisted of consecutive workdays caused by the same reason.  McCune conceded, as he had to, that although the handbook provides that nine occurrences warrant termination, Arismendez had one occurrence at the time she was terminated.  Thus, there is evidence that the termination was in violation of the handbook.

In further support of its "excessive absenteeism" argument, Nightingale states that it was operating with a skeletal staff, and a hiring freeze prevented it from employing a temporary employee.  On the other hand, the evidence demonstrated that the McAllen

12

branch operated without a branch manager for an entire year (February 2002 to February 2003). Nightingale also points to evidence that the McAllen branch was experiencing additional demand for its services because of seasonal "winter Texans." However, Arismendez was fired in the spring and thus the jury could reasonably infer that the demand from the winter Texans was abating.

Ultimately, drawing all reasonable inferences in favor of Arismendez, we conclude that Nightingale has not demonstrated that it would have terminated her in the absence of the discriminatory animus. Tex. Lab. Code § 21.125(b). In the instant case, the jury believed Arismendez, and there is more than a scintilla of evidence to support the jury verdict. Thus, the district court erred in granting judgment as a matter of law to Nightingale, and we reverse and remand the judgment.

C. Punitive Damages

Arismendez contends that the district court erred in remitting the punitive damages awarded by the jury. Applying Texas law, the district court remitted the damages from $1,000,000 to $200,000. Tex. Civ. Prac. & Rem. Code § 41.008. Section 41.008 provides that:

> (a) In an action in which a claimant seeks recovery of exemplary damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.

> (b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

13

           (1)(A)  two times the amount of economic damages;
plus

           (B) an amount equal to any noneconomic damages
found by the jury, not to exceed $750,000; or

           (2) $200,000.

The application of the above statute to the amount of damages
awarded Arismendez results in a cap of the punitive or exemplary
damages at $200,000.  Arismendez argues that Nightingale waived any
statutory cap by failing to timely plead it.  In the alternative,
she argues that the statutory cap found in the TCHRA, which allows
a total damages award of $300,000, applies to her suit.  Tex. Lab.
Code § 21.2585.

                    (1) Waiver

Arismendez contends that the employer waived the statutory cap
by failing to properly invoke it as an affirmative defense in
district court.  In a diversity action such as this, substantive
state law determines what constitutes an affirmative defense.
*Lucas v. United States,* 807 F.2d 414, 417 (5th Cir. 1986).
However, "the Federal Rules of Civil Procedure provide the manner
and time in which defenses are raised and when waiver occurs."
*Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th
Cir. Unit B 1981).  Rule 8(c) of the Federal Rules of Civil
Procedure "requires that an affirmative defense be set forth in a
defendant's responsive pleading.  Failure to comply with this rule,
usually results in a waiver." *Lucas,* 807 F.2d at 417.  "'Where the

14

matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal.'" *Id.* (quoting *Allied Chem. Corp. v. Mackay*, 694 F.2d 854, 855-56 (5th Cir. 1983)). More specifically, a defendant does not waive an affirmative defense if it is raised at a "'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" *Lucas*, 807 F.2d at 418 (quoting *Mackay,* 694 F.2d at 856) (brackets in opinion).

In *Seminole Pipeline v. Broad Leaf Partners,* a Texas Court of Appeals held that the statutory cap in Chapter 41 was not an affirmative defense. 979 S.W.2d 730, 759 (Tex. App. – Houston [14th Dist.] 1998).[5] The court explained that the cap automatically applied and "[b]ecause the defendants had nothing to prove, they had nothing to plead." *Id.* Here, if the statutory cap is not an affirmative defense and automatically applies, Arismendez's claim of waiver is without merit. However, another Texas Court of Appeals has opined that "[w]here maximum damages are

---

[5] *Seminole Pipeline* involved a former version of the instant statutory cap, which provided that "exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater." *Wheelways Ins. Co. v. Hodges,* 872 S.W.2d 776, 783 n.8 (Tex. App. – Texarkana 1994) (quoting Tex. Civ. Prac. & Rem. Code Ann. 41.007 (Vernon Supp. 1994)). Although the current cap involves a different calculation for the statutory maximum amount of punitive damages, it is a distinction without a difference. In other words, the current version of the cap likewise requires the defendant to prove nothing.

15

provided in statutes in Texas, and a defendant wants to rely on the cap, it is considered a defense that must be plead and proved." *Shoreline, Inc., v. Hisel,* 115 S.W.3d 21, 25 (Tex. App.–Corpus Christi 2003)[6] (citing *inter alia* § 41.008).

We need not determine whether the relevant statutory caps constitute affirmative defenses under Texas law. Assuming *arguendo* that the statutory caps are affirmative defenses, Arismendez has not shown that Nightingale waived the defense. In a Joint Pretrial Order, Arismendez referred to a statutory cap on damages. Although the employer did not plead a statutory cap in its answer, the employer did raise it prior to entry of judgment. Additionally, there were no factual issues to determine. While Arismendez asserts that Nightingale failed to prove the number of employees it had during the relevant time frame, that fact is irrelevant under the cap in Chapter 41.[7]

Further, Arismendez has not shown how she was prejudiced by the delay in raising the statutory cap. We conclude that the employer raised the cap at a pragmatically sufficient time, and

---

[6] That case in involved the statutory cap found in § 21.2585(d).

[7] The number of employees would be relevant only if we applied the TCHRA cap because it determines the maximum amount of total damages based on the number of employees. § 21.2585(d)(1)-(4). However, Nightingale has conceded that it has over 500 employees, which places it in the highest punitive damages cap ($300,000) under TCHRA. In any event, because we ultimately determine that the cap in Chapter 41 applies, the number of employees is irrelevant. *See infra* Part II.C.(2).

16

Arismendez was not prejudiced.  The district court properly ruled that the employer had not waived the statutory cap.

(2) TCHRA cap

In the alternative, Arismendez argues that the district court erred in applying the cap in § 41.008; instead, she contends that the applicable cap is found in the TCHRA.  Tex. Lab. Code § 21.2585(d).  Section 21.2585(d) provides that:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and the amount of punitive damages awarded under this section may not exceed, for each complainant . . .
>
> (4) $300,000 in the case of a respondent that has more than 500 employees.

Arismendez asserts that because her suit is brought pursuant to the TCHRA, the statutory cap found in that Act should apply.  However, Chapter 41 of the Texas Civil Practice and Remedies, entitled "Exemplary Damages," provides that "[t]his chapter applies to any action in which a claimant seeks exemplary damages relating to a cause of action."  § 41.002(a).  Section 41.002(b) further states that:

> This chapter establishes the maximum exemplary damages that may be awarded in an action subject to this chapter, including an action for which exemplary damages are awarded under another law of this state.  This chapter does not apply to the extent another law establishes a lower maximum amount of exemplary damages for a particular claim.

Accordingly, the statutory cap applied by the district court provides that it applies to any action involving exemplary or

17

punitive damages unless another law establishes a *lower* cap. Further, the statute expressly provides that it applies to all punitive damages except for an inclusive list. § 41.002(b) (1)-(15) and (d). That list does not exempt an action brought pursuant to TCHRA. The statute also instructs that "in an action to which this chapter applies, the provisions of this chapter *prevail over all other law* to the extent of any conflict." § 41.002(c) (emphasis added).

We have found no Texas case addressing this precise question. Arismendez, relying on *Union Pac. R.R. Co. v. LOA,* asserts that the lower cap in the TCHRA ($300,000) controls over the maximum recovery allowed in Chapter 41 ($750,000). 153 S.W.3d 162 (Tex. App. – El Paso 2004). This case offers Arismendez no succor. In *LOA,* based on the amount of compensatory damages awarded by the jury ($800,000), the maximum amount of punitive damages allowed by Chapter 41 was $750,000. *Id.* at 173. However, the maximum total award, including punitive damages, that TCHRA ever allows is $300,000. Thus, in *LOA,* the damages cap in the TCHRA was lower than the cap in Chapter 41. Under those circumstances, Chapter 41 dictated that the lower cap found in TCHRA applied. § 41.002(b). Although the opinion does not provide this analysis, the court came to the correct conclusion that the lower cap in the TCHRA applied.[8]

---

[8] The court stated that "[b]ecause we have ruled, however, that the judgment is limited to the claims established by the TCHRA which contemplates a cap of both compensatory and punitive damages

18

In contrast, the maximum amount of punitive damages Chapter 41 allows based on the amount of economic damages awarded Arismendez is $200,000—not $750,000. For Arismendez, the cap of $200,000 in Chapter 41 is the lower and therefore applicable cap.[9]

Arismendez also contends that the applicable statutory cap should be determined prior to the jury's verdict to alleviate uncertainty as to potential liability or recovery. The above-quoted statutory scheme in Chapter 41 setting the maximum exemplary award cannot be determined until the jury has awarded economic damages. Once the statutory cap of Chapter 41 has been determined, a district court can then determine if another (here TCHRA) statutory cap is lower and therefore controlling. Arismendez's contention that the cap should be determined in the first instance flies in the face of the Texas statutory scheme used to determine the cap on a punitive damage award. It is without merit.

In light of the broad language in Chapter 41 reaching any punitive damage awards except for certain enumerated actions not

---

and reformed the judgment below in conformance herewith, we do not reach Issue No. Three." *Id.* at 173.

[9] Arismendez also cites *Hoffmann-LA Roche, Inc., v. Zeltwanger,* 144 S.W.3d 438 (Tex. 2004), in support of the proposition that the TCHRA cap applies. In that case, in a footnote, the court noted that the current cap in Chapter 41 applied only to actions accruing after September 1, 1995. *Id.* at 442 n.4. More to the point, there was no argument regarding which cap applied. The issue joined in that case was whether the plaintiff could recover damages on a claim for intentional infliction of emotional distress based on the same actions that formed the basis of her sexual harassment damages.

19

relevant here, and the express language that Chapter 41 prevails over all other conflicting law except when a *lower* maximum amount is set, we are persuaded that the district court correctly applied the cap found in § 41.008 to remit the punitive damage award to $200,000.

III. CONCLUSION

For the above reasons, the district court's judgment as a matter of law in favor of the employer is REVERSED and REMANDED for proceedings consistent with this opinion. Additionally, the district court is directed to reinstate the jury's award of damages and remit the punitive damages to $200,000.