# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2014

Lyle W. Cayce
Clerk

No. 13-50102

MONICA HAGUE,

Plaintiff - Appellant

v.

UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER
AT SAN ANTONIO,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-1101

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:*

Monica Hague appeals the district court's grant of summary judgment in favor of her former employer, the University of Texas Health Science Center at San Antonio ("UTHSC"), on her sexual harassment, discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 2000e, *et seq.* ("Title VII"). We AFFIRM the district court's judgment with respect to Hague's claims of sex discrimination and sexual harassment and VACATE and REMAND Hague's claim of retaliation for further proceedings.

**I.**

Hague, a registered nurse, worked for UTHSC as a Civilian Training Officer in the Emergency Health Services Department from December 15, 2008, through August 31, 2011. She was hired on a term basis and her contract was renewed twice, each time for an additional one-year period.

During this time, Hague filed two complaints with hospital administration. First, Hague complained of sexual harassment by her colleague Dr. Manifold to the interim Associate Dean Dr. Wallace in September of 2010. She alleged that Dr. Manifold, the Department Medical Director, sexually harassed her by reading an explicit magazine article out loud during a department meeting. Hague also alleged that Dr. Manifold gave a co-worker a sexually explicit doll. In October, Hague followed with an official complaint to Dr. Blankmeyer, the person responsible for civil rights compliance issues pertaining to faculty members.[1] After the internal investigation, Dr. Blankmeyer's supervisor, Dr. Murphy, sent separate memoranda to Hague and Dr. Manifold in December, explaining the result of the investigation and admonishing Dr. Manifold's prior behavior. [2]

---

[1] Dr. Blankmeyer is responsible for civil rights compliance issues pertaining to faculty, residents, students, and visitors.

[2] Although the investigation found that "the alleged event clearly does not rise to the level of sexual harassment," the memoranda concluded that Dr. Manifold's actions did "meet parts of the definition of sexual misconduct" and were "unprofessional and inappropriate for the workplace or classroom." Hague later testified that, subsequent to Dr. Manifold's reprimand, no further incidents of alleged sexual harassment occurred.

Second, Hague filed a grievance with Dr. Wallace concerning Dr. Villers, the head of the Emergency Health Services Department.[3] Hague's grievance alleged that Dr. Villers treated employees differently and fostered an uninviting work environment.[4] An internal investigation cleared Dr. Villers of Hague's allegations, but Dr. Murphy nonetheless recommended that Dr. Villers make certain improvements in communications within the department.

Hague filed a formal Equal Employment Opportunity Commission ("EEOC") complaint on June 17, 2011. On June 20, 2011, UTHSC provided Hague a letter advising that her contract would not be renewed and her employment with UTHSC would not continue beyond August 31, 2011. UTHSC did not receive notice of Hague's formal EEOC complaint until June 21, 2011.

Hague received a right-to-sue letter and subsequently filed this suit alleging violations of Title VII. She alleges that UTHSC unlawfully retaliated against her, that she was wrongfully discriminated against on account of her gender, and that she was sexually harassed in the workplace. The district court granted summary judgment in favor of UTHSC. Hague appeals, arguing that she raised genuine issues of material fact on all claims.

## II.

We review a grant of summary judgment de novo, applying the same standards as the district court. *Am. Home Assurance Co. v. United Space*

---

[3] Wallace responded to the initial grievance, which Hague made in person on in September of 2010, by requesting that Hague provide a more concise and clear statement of the required elements for the grievance, in order to comply with internal policy. Hague then filed her formal grievance in October.

[4] Dr. Murphy's summary of the grievance indicates that Hague denied that the differential treatment stemmed from gender discrimination.

*Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also* FED. R. CIV. P. 56(a).

## III.

### A. Sex Discrimination

Hague must "exhaust [her] administrative remedies before bringing suit under Title VII." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). An employee may file a lawsuit "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

Hague failed to include a specific sex discrimination claim on her EEOC intake sheet and consequently did not exhaust her administrative remedies on that claim. Although Hague argues that she fulfilled the purpose of the court's exhaustion requirement because her EEOC complaint and her complaint in this lawsuit put UTHSC on notice of a sex discrimination claim, the details listed on her complaint concern only her allegations of *harassment*.[5] Thus,

---

[5] Hague did not allege any facts in her EEOC form that clearly set out a claim for disparate treatment on the basis of her sex. *See Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.4 (5th Cir. 1994) (citing cases for the proposition that sexual harassment and disparate treatment are distinct for exhaustion of EEOC administrative remedies). Moreover, Hague's intake sheet could not possibly have included such a grievance because the record indicates that she had not yet received the letter notifying her that her contract would not

Hague's subsequent claim regarding sex discrimination not based upon harassment falls outside "the scope of the EEOC investigation" and could not reasonably be expected to grow out of her initial charge of sexual harassment.

## B.    Sexual Harassment

Hague also claims that Dr. Manifold's conduct regarding the sexually explicit doll and reading of the internet article amounted to sexual harassment. She argues that the district court erred in failing to analyze her complaint as a *quid pro quo* claim, because she alleges harassment by a supervisor resulting in her non-renewal, a "tangible employment action." *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).

However, Hague's sexual harassment claim fails because Dr. Manifold was not her supervisor. Dr. Manifold did not have the power to take tangible employment actions against her.[6] *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (holding that an "employer may be vicariously liable [under Title VII] for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim"). The record reflects (and no competent evidence contradicts) that Hague did not report to Dr. Manifold and that Dr. Manifold did not have the

---

be renewed. Therefore, she did not complain of gender bias in non-renewal of appointment, or indicate that her replacement was by a male employee.

[6] The summary judgment record indicates that Hague was employed as a full-time instructor in the Continuing Education Division. Her immediate supervisor was Joe Lindstrom, who reported directly to the Department Chair, Dr. Villers. Lindstrom conducted Hague's performance evaluations, and gave hiring input to Dr. Villers. The Department organizational chart indicates that Dr. Manifold, the Medical Director, did not have supervisory power over Hague's employment.

authority to make employment decisions regarding Hague, including her contract non-renewal. Further, Hague's allegations of Dr. Manifold's conduct do not fit the definition of *quid pro quo*, in which "the grant or denial of employment advancement, such as a promotion or raise, depends upon whether an employee acquiesces to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 500 (5th Cir. 2009).

Hague's co-worker harassment claim is therefore properly analyzed under the standards for hostile work environment. *See Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). A hostile work environment claim consists of five elements: (1) membership in a protected group; (2) unwelcome sexual harassment; (3) harassment complained of is based on sex; (4) harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* We agree with the district court that Hague failed to raise an issue of material fact concerning the fourth element—whether the harassment complained of affected a term, condition, or privilege of employment.

For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions' of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). To determine whether conduct is objectively abusive, we look to the totality of the circumstances: the

frequency of discriminatory conduct, its severity, whether it involves physical threats or humiliation as opposed to mere offensive utterances, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermined the plaintiff's workplace competence. *See Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 325–26 (5th Cir. 2004).

Hague identifies only two instances of sexually harassing conduct—the magazine article and the doll—only one of which was directed at her. No physical or sexual advances were made to Hague, as is characteristic of many hostile environment claims. *See, e.g.*, *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989). Nor were offensive comments made frequently over a period of time. *See, e.g.*, *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996). The record lacks evidence on any other factor suggesting that Dr. Manifold's conduct affected a term, condition, or privilege of Hague's employment. We conclude that these incidents described by Hague, though wholly inappropriate, do not evince sufficiently pervasive hostility toward her as a matter of law, and therefore, the district court properly granted summary judgment for UTHSC on Hague's sexual harassment claim.

## C.    Retaliation

Finally, Hague appeals the district court's grant of summary judgment in favor of UTHSC on her retaliation claim. Title VII prohibits an employer from taking an adverse employment action against an employee because she has filed an employment discrimination charge. *See* 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). Hague contends that UTHSC unlawfully retaliated against her in response to her

discrimination and harassment claims, and argues that UTHSC's decision not to renew her contract is a self-evident showing of retaliation.

To establish a prima facie case of retaliation under Title VII, a plaintiff "must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007). Pursuant to the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), "[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted).

An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013). In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

### *Prima Facie Case*

UTHSC contends that the summary judgment should be affirmed as to the retaliation claim, stating that Hague did not explicitly challenge the district court's ruling that she failed to establish her prima facie case. This

Court has frequently cited to our rule that an Appellant must attack all the bases for the judgment of the district court. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (explaining that the Court "will not raise and discuss legal issues that [Appellant] has failed to assert"). However, in this case, while the district court discussed the causal connection element of her prima facie case, a careful reading of the opinion reveals that the court did not make a determination as to whether Hague had established a causal connection between her complaint and UTHSC's decision not to renew her contract. Instead, the court suggested that Hague *may* not have shown a causal connection, focusing on precedent that held that the temporal proximity between the protected activity and the adverse employment action was insufficient to establish a causal connection. The district court then stated that even if Hague had made a prima facie case, it found she had failed to show pretext.

In her brief, Hague expressly states that she "has elected to pursue this case under the pretext alternative." We understand why Hague did not specifically challenge the district court's holding as to her prima facie case because the district court did not definitively rule on her prima facie case. Under these circumstances, we cannot fault Hague for not making this challenge. Accordingly, in light of no holding on the issue of a prima facie case, and as set forth *infra*, our conclusion that Hague has demonstrated pretext, we think it best to vacate and remand the judgment with respect to the

retaliation claim to allow the district court to determine in the first instance whether Hague established a prima facie case of retaliation.[7]

The dissent disagrees with our conclusion that on remand the district court must definitively address in the first instance whether Hague established a prima facie case. Instead, relying on *United States Postal Serv. Brd. Of Governors v. Aikens,* 460 U.S. 711 (1983), the dissent would hold that because UTHSC produced legitimate, non-retaliatory reasons for the adverse employment action, it is irrelevant whether Hague actually established a prima facie case. However, this Court has repeatedly interpreted *Aikens* to apply only after a trial. In *Arismendez v. Nightingale Home Health Care, Inc.,* the employer argued that the employee had failed to establish a prima facie case of discrimination. 493 F.3d 602, 607 (5th Cir. 2007). This Court rejected that argument, explaining that "[b]ecause this case was 'fully tried on the merits,' the *McDonnell Douglas* burden-shifting framework 'drops from the

---

[7] We note that, on remand, the district court's analysis of whether Hague has shown a causal connection between her complaint and UTHSC's decision not to renew her contract should *not* be limited solely to the temporal proximity between the two events. Indeed, this Court has explained that a district court properly weighs temporal proximity as part of the "entire calculation of whether [the employee] had shown a causal connection between the protected activity" and the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). As discussed more fully in our pretext analysis, in addition to temporal proximity, Hague has pointed to Dr. Villers's deposition testimony in which Dr. Villers testified that he declined to renew Hague's contract, in part, because of "issues of trust." Hague has also pointed to the termination of two other female employees who had supported Hague's complaint, and UTHSC's lack of contemporaneous explanation of the reasons for Hague's non-renewal of her contract. *Cf. id.* at 43–44 (holding that, despite a 14-month gap between the protected activity and adverse employment action, a plaintiff had established a prima facie case of causation by pointing to evidence that the employer frequently referenced and made disparaging comments about the plaintiff's EEOC complaint and by drawing a comparison between pre- and post-complaint work performance evaluations). Accordingly, we leave for the district court to determine in the first instance whether Hague's evidence demonstrates a causal connection between her filing a grievance and UTHSC's decision not to renew her employment contract.

case.'" *Id.* (quoting *Aikens*, 460 U.S. at 713–14, 715). This Court further explained that "*after trial*, the sufficiency of the prima facie case as such is no longer relevant." *Id.* (emphasis added) (quoting *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 224 n.5 (5th Cir. 2000) (quoting *Aikens*, 460 U.S. at 715) (internal quotation marks omitted)). This Court's opinions in *Arismendez* and *Russell* clearly interpreted the rule in *Aikens* to apply to cases that have gone to trial. *Accord Barnes v. Yellow Freight Sys. Inc.,* 778 F.2d 1096, 1100 (5th Cir. 1985); *Avant v. S. Cen. Bell Tele. Co.,* 716 F.2d 1083, 1086–87 (5th Cir. 1983). Moreover, under *McDonnell Douglas,* at the summary judgment stage the burden of producing a legitimate, nondiscriminatory reason only shifts to the employer *after* the plaintiff has established a prima facie case. There is no authority in this Circuit that would allow the employee's burden of establishing a prima facie case to be extinguished simply because an employer exercises its right to challenge the prima facie case and also proffers a legitimate, nondiscriminatory reason for its decision.

Nevertheless, citing *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 122 (5th Cir. 1992), the dissent states that this Court has "followed *Aikens* and found that the plaintiff's prima facie case becomes irrelevant once the defendant meets his burden of production." Dissenting opinion at 2. However, in that case, this Court specifically explained that "when a case has been tried on the merits, a reviewing appellate court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question whether plaintiff has produced sufficient evidence for a jury to find that discrimination has occurred." *Walther*, 952 F.2d at 122–23. Because the instant case was not tried on the merits, *Aikens* does not apply. Further, we

do not read the Fifth Circuit cases cited by the dissent as holding that, during the summary judgment stage, a plaintiff's prima facie case becomes immaterial once an employer produces legitimate, non-retaliatory reasons for the adverse employment action. In any event, to the extent the cases can be so construed, we are bound by our earlier precedent, *Walther*, which applies *Aikens* to cases that have been tried on the merits. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) (stating that "where two previous holdings or lines of precedent conflict the earlier opinion controls"). Finally, we note that in two unpublished opinions this Court has expressly declined to adopt the rule that whether a plaintiff has established a prima facie case becomes irrelevant once the defendant produces legitimate reasons for the adverse employment action in a summary judgment case. *See Stallworth v. Singing River Health System,* 469 F. App'x 369, 372 (5th Cir. 2012); *Atterberry v. City of Laurel,* 401 F. App'x 869, 871 n.1 (5th Cir. 2010). Accordingly, until the Supreme Court or this Court, sitting en banc, rules otherwise, we follow our precedent and hold that the district court must address whether Hague established a prima facie case of retaliation.[8]

---

[8] We note that there is a circuit split with respect to whether the holding in *Aikens* applies at the summary judgment stage or only applies once there is a trial on the merits. *Compare Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008) (applying *Aikens* at summary judgment); *Riser v. Target Corp.*, 458 F.3d 817, 820–21 (8th Cir. 2006) (same); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (same); *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998) (same), *with Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 336 n.* (4th Cir. 2013) (declining to apply *Aikens* at the summary judgment stage); *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1202 n.12 (10th Cir. 2008) (declining to find that a prima facie case is immaterial at the summary judgment stage); *Collado v. United Parcel Serv., Co.*,419 F.3d 1143, 1150 (11th Cir. 2005) (recognizing that *after* a trial on the merits, a court should not revisit whether a plaintiff established a prima facie case).

*Pretext*

Assuming that Hague has demonstrated a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. Before the district court, UTHSC relied upon Dr. Villers's testimony in which he had given numerous reasons for his decision not to renew Hague's contract. We think it significant that, although Dr. Villers refused to give Hague any reason when he notified her that her contract was not being renewed, during the instant litigation Dr. Villers was able to supply a laundry list of reasons. Further, Dr. Villers admitted during his deposition that he never provided Hague anything in writing regarding her alleged infractions.[9]

In any event, once UTHSC satisfies the burden of producing its reasons, Hague must demonstrate that the reasons are actually pretext for retaliation. An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. *Nassar*, 133 S. Ct. at 2533–34. In order to avoid summary judgment, Hague must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long*, 88 F.3d at 308 (internal quotation marks omitted). We note that the Supreme Court has explained that evidence establishing the prima facie case and any inferences drawn therefrom may also be considered when determining whether pretext has been shown. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *accord Edwards v. Wal-Mart Stores, Inc.*, 247 F.3d 241 (table), 2001 WL 43546, at*3 (5th Cir. 2001).

---

[9] Dr. Villers did testify that he verbally counseled her regarding his concerns.

Here, the district court held that "even if Hague could establish a causal connection based on temporal proximity—thereby making out a prima facie case of retaliation—her claim fails because UTHSC has offered, and she has not rebutted, legitimate, non-retaliatory reasons for its decision not to renew Hague's employment for another term." We disagree and conclude that Hague's evidence raises a substantial conflict regarding whether her employer would have decided to renew her contract but for her reported complaints.

The district court stated that the only summary judgment evidence Hague offered to rebut UTHSC's reasons was her performance evaluation. However, in her response to UTHSC's motion for summary judgment, Hague also pointed out that UTHSC did not renew the contract of other female employees who had supported Hague's complaint during the investigation. As such, the district court's analysis overlooks Hague's reliance on the termination of two other female employees who supported Hague's complaint as evidence of pretext. One of the employees, Esther Tarango, was an administrative assistant at UTHSC. Dr. Manifold had given Tarango the previously mentioned sexually explicit doll, and it was that incident that prompted Hague to file a sexual harassment complaint against Dr. Manifold. In Tarango's deposition, she testified that she brought the doll to the attention of her supervisor. Tarango also testified that Dr. Blankmeyer interviewed her during the investigation of Hague's complaint. During the interview, Tarango showed the doll to Dr. Blankmeyer and told Dr. Blankmeyer that she found the doll offensive.

Additionally, the evidence shows a conflict regarding Dr. Villers's stated reasons for not renewing Tarango's contract. *Nasti v. CIBA Specialty*

14

*Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct.").[10] According to Tarango's testimony, when Dr. Villers notified her that that her contract was not being renewed, he said "due to the budget cuts, we're going to have to let you go." However, during his deposition, Dr. Villers testified he did not renew Tarango's contract because he "needed a staff position of a higher category according to the HR for the school and that higher category would include a higher level of experience or education background."[11]

With respect to the timeline of these events, Tarango was terminated at the beginning of July 2011, and Hague had been notified that her contract would not be renewed on June 20, 2011. Thus, Tarango, who had supported Hague's complaint during the investigation, was terminated shortly after Hague was given notice of her non-renewal.

As for the other employee who supported Hague's complaint, Hague testified that her colleague, Lou Ann Mullins, complained to Dr. Juanita Wallace about the doll incident during the same week that Hague did. Dr. Villers notified Mullins that her contract was not being renewed at the same meeting in which he notified Hague. Similar to his testimony regarding the non-renewal of Hague's contract, Dr. Villers testified that he did not renew Mullins's contract because he "had issues of trust with her as well."

---

[10] Although this evidence shows pretext with respect to UTHSC's reasons for Tarango's loss of employment, we find it relevant in light of the similarity of Tarango's support of Hague's complaint.

[11] By the time of her deposition, Tarango had secured employment in another department at UTHSC.

We now turn to Hague's complaint regarding Dr. Villers. In her grievance, Hague complained, among other things, that right after an incident in which Dr. Villers raised his voice at her, she was walking through a doorway and "Dr. Villers was entering and he physically bumped into me and neither apologized for his actions nor acknowledged my presence." During the grievance proceedings at UTHSC, Dr. Villers denied any physical contact with Hague during the incident. During his deposition, Dr. Villers testified that he made the decision not to renew Hague's contract because "it came down to issues of trust." When explaining what issues of trust he had with Hague, Dr. Villers referenced, among other things, Hague's report in which she claimed he bumped into her. Dr. Villers testified that Hague "said that I had pushed her or shoved her, brushed up against her and – I don't recall the exact wording, but something in my mind implied that she was saying that I assaulted her and that was not – I couldn't accept her either lying or misrepresenting something that had occurred." Accordingly, when asked to explain the basis for his decision not to renew her contract, Dr. Villers expressly referenced a grievance Hague had filed against him.[12] Although Dr. Villers testified that "[i]t wasn't the issue of the reporting," his testimony raises a fact issue as to whether the decision not to renew her contract was caused by her filing the grievance.

---

[12] Indeed, Dr. Villers's testimony arguably may be viewed as direct evidence of discrimination because a jury could find that this testimony proves that retaliation was the reason for the non-renewal of the contract without any inferences or presumptions. *Cf. Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) ("Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (*i.e.*, unlawful discrimination) without any inferences or presumptions.").

Hague also relied upon the deposition testimony of her direct supervisor, Joe Lindstrom, to rebut UTHSC's proffered reasons. For example, Lindstrom's testimony rebutted UTHSC's reason that Hague improperly documented her hours on the time sheets. Lindstrom's testimony also rebutted UTHSC's reason that Hague's taking patient files home constituted a privacy violation. With respect to Lindstrom's allegation that Hague inaccurately portrayed her faculty title as indicating she was employed by the San Antonio Fire Department, Lindstrom testified that that issue was not specific to Hague; instead, it was an issue pertaining to the entire staff. As for UTHSC's allegation that Hague failed to attend a particular conference and notify her supervisors, Lindstrom testified Hague did advise him regarding her inability to attend. He further testified that he did not consider her absence at the conference a disciplinary problem. UTHSC also had pointed to Hague's failure to pass a written examination on the new operating procedures that had been implemented. Lindstrom testified that approximately four employees did not pass the initial examination; however, all the employees, including Hague, eventually passed the test.

In conclusion, we have reviewed the record and are convinced that, viewing the evidence in the light most favorable to Hague, she has raised a fact issue as to whether UTHSC would have renewed her contract but for her complaints. Simply put, a reasonable jury could conclude that UTHSC's reasons for not renewing Hague's contract were pretextual.

For the above reasons, the district court's judgment is AFFIRMED in part, VACATED in part and REMANDED for further proceedings.

KING, Circuit Judge, concurring in part and concurring in the judgment.

I concur fully in Parts I, II, III.A, and III.B of the Judge Benavides' opinion.

I further agree that, whether correctly or not, this circuit's precedent requires the district court to determine, at the summary judgment stage, whether the plaintiff has established a prima facie case under *McDonnell Douglas*. Thus, I also concur in Judge Benavides' decision to remand the retaliation claim to the district court to decide whether the plaintiff has made a prima facie showing of retaliation and, if so, for a trial on the merits.

JAMES L. DENNIS, Circuit Judge, concurring in part and dissenting in part:

Although I concur in parts I, II, III-A and III-B of the majority opinion, I respectfully dissent from part III-C and the resolution of Hague's retaliation claim. I agree with the majority's holding that the evidence presented to the district court raises a substantial conflict regarding whether Hague's employer decided not to renew her contract in retaliation for her participation in protected activity, and thus the summary judgment order must be vacated in part. However, I dissent from the majority's conclusion that on remand, the district court must now reassess whether Hague has established a prima facie case before she may proceed to trial on her retaliation claim. I would instead conclude that under *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711 (1983), once a defendant-employer produces legitimate, non-retaliatory justifications for its actions, the plaintiff's prima facie case is rendered immaterial, and a court's inquiry should focus on the plaintiff's ultimate burden of proving that the employer's purportedly legitimate justifications for its employment actions were a pretext for retaliation. Here, because all panel members agree that Hague demonstrated genuine issues of material fact from which a reasonable fact-finder could conclude that UTHSC's proffered justifications for its employment decision were mere pretext and that UTHSC would have renewed Hague's contract but for her complaints, I would vacate the summary judgment order with regard to Hague's retaliation claim and remand the case for trial.

Requiring that a plaintiff-appellant articulate a prima facie case of retaliation, even after a defendant-employer has produced what it contends are legitimate, non-retaliatory justifications for its actions, results in an unnecessarily hyper-technical reading of the *McDonnell Douglas* burden-

shifting framework.[1]  The Supreme Court has explained that, "[t]he *prima facie* case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic.'"  *Aikens,* 460 U.S. at 715.  Rather, it functions in practice as a "means of arranging the presentation of evidence."  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510 n. 3 (1993) (internal quotation marks omitted).  In *Aikens* the Court explained:

> [W]hen the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. . . .  Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant.  The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

460 U.S. at 714-15.  This court, along with a majority of our sister circuits, have followed *Aikens* and found that the plaintiff's prima facie case becomes irrelevant once the defendant meets his burden of production.  *Walther v. Lone Star Gas Co.* 952 F.2d 119, 122 (5th Cir. 1992) (quoting *Aikens* and reasoning that because "the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case . . . a reviewing appellate court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question"); *see also Noble v. Brinker Int'l., Inc.,* 391 F.3d 715, 720-21 (6th Cir. 2004) (finding that once the

---

[1] In *McDonnell Douglas,* the Court explained that:

The complainant in a Title VII trial must carry the initial burden . . . of establishing a prima facie case of racial discrimination. . . .  The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . .  [B]ut the inquiry must not end here . . . [The plaintiff must] be afforded a fair opportunity to show that [the defendant's] stated reason for [plaintiff's] rejection was in fact pretext.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805-807 (1973).

defendant produced purportedly non-discriminatory justifications for its actions, "our duty, given *Aikens,* is simply to determine whether [the plaintiff] produced sufficient evidence to support the jury's finding of intentional discrimination"); *Nellis v. Brown Cnty.*, 722 F.2d 853, 857 (7th Cir. 1983) (concluding that when the defendant "attempted to rebut a prima facie case . . . according to *Aikens,* the issue of a prima facie case is no longer relevant"); *Holmes v. Bevilacqua,* 794 F.2d 142, 148 (4th Cir. 1986) ("when the judge acted upon the Rule 41(b) motion, the issue was no longer one of a *prima facie* case, and the question was whether the defendant had intentionally discriminated against the plaintiff"); *Thompson v. Union Carbide Corp.* 815 F.2d 706, *4 (6th Cir. 1987) (unpublished) ("[O]nce the defendant responds with proof of nondiscriminatory reasons for its actions, whether the plaintiff made out a prima facie case is no longer relevant" (citing *Fields v. Bolger*, 723 F.2d 1216, 1219 (6th Cir. 1984))); *Thompson v. Rockwell Int'l. Corp.*, 811 F.2d 1345, 1349 n.3 (10th Cir. 1987). Accordingly, in this case, when UTHSC has done everything that would be required of it had Hague properly made out a prima facie case, whether she really did so is no longer relevant. The district court had before it all the evidence it needed to decide whether Hague had sufficiently demonstrated a genuine issue of material fact regarding whether the defendant intentionally retaliated against her.

Although the instant case involves a summary-judgment order, and *Aikens* was decided on appeal from a jury verdict, that difference in procedural posture is immaterial. I am unpersuaded by the majority's insistence that because we have applied *Aikens* to appeals from judgments following a full trial, we are consequently precluded from applying the *Aikens* rule to an appeal from summary judgment, when the defendant-employer has done everything that would be required of him had the plaintiff established a prima facie case. As Judge Hartz in the Tenth Circuit has explained:

> There is no reason to limit *Aikens* to review of judgments after trial. . . . After all, the test for summary judgment is whether the evidence would support a verdict at trial. . . . If it is inappropriate to concern ourselves with whether the plaintiff has proved a prima facie case when we review a judgment after a trial in which the employer introduced evidence of its reasons for adverse actions against the plaintiff, it should also be inappropriate to worry about the prima facie case when we review a summary-judgment proceeding in which the employer proffered such evidence.

*Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1227-28 (10th Cir. 2003) (Hartz, J., writing separately). Not one case cited by the majority dictates the conclusion that our precedent limits the *Aikens* rule to appeals following trial. Rather, the precedent the majority relies upon simply applies *Aikens* to appeals following a full trial on the merits, without commenting on whether *Aikens* should be equally applied to appeals following summary judgment. *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007). Moreover, we have repeatedly applied the *Aikens* holding to the summary-judgment context. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999) (explaining that once a "case reache[s] the pretext stage, the only question *on summary judgment* is whether the evidence of retaliation, in its totality, supports an inference of retaliation") (emphasis added); *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 371 (5th Cir. 1997) ("Once the defendant has presented evidence that, '*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action,' the shifted burden of production becomes 'irrelevant.'"); *Messer v. Meno*, 130 F.3d 130, 137 (5th Cir. 1997) (reversing summary judgment in part and explaining that "[i]f the employer meets this burden, the scheme of shifting burdens and presumptions 'simply drops out of the picture'"). Many of our sister circuits have likewise found that *Aikens* applies on appeal from summary judgment. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405,

411 (D.C. Cir. 2005) ("[A]s part of the parties' cross-motions for summary judgment, the Government articulated legitimate reasons for George's discharge . . . . Accordingly, heeding *Aikens*' instruction, we need not address the Government's contentions that George failed to make out a prima facie case."); *Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006) (reasoning that, in a Title VII case, on review of a district court's grant of summary judgment, an appellate court should focus on the ultimate question of retaliation or employment discrimination rather than on the prima facie burden so that the court may "see the forest through the trees"); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) ("[B]y the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision . . . . [Therefore,] the question whether the employee actually made out a prima facie case is no longer relevant and thus disappear[s] and drops out of the picture") (internal quotation marks omitted); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 2000) (reversing summary judgment without consideration of the prima facie case because "by producing evidence of its nondiscriminatory reason, a defendant has moved the inquiry to the ultimate factual question," and thus to inquire into the prima facie case "would mistakenly apply[] legal rules which were devised to govern the basic allocation of burdens and order of presentation of proof in deciding this ultimate question"); *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 762-63 (D.C. Cir. 2002) (explaining that because the defendant "presented its full defense to [Plaintiff's] claims when it moved for summary judgment . . . [a]s in *Aikens,* the proper question now is whether the employer unlawfully discriminated against the plaintiff"); *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 170 (6th Cir. 1996); *Lindemann v.*

*Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998); *Morrison v. City of Bainbridge*, 432 F. App'x 877, 881 n. 2 (11th Cir. 2011) (unpublished).

The majority ignores binding precedent when it acknowledges that UTHSC met its burden of production and that Hague in response raised disputed issues of fact from which a reasonable jury could find that UTHSC intentionally retaliated against her yet nonetheless requires the district court to reconsider the sufficiency of Hague's prima facie case. As I read *Aikens* and our circuit's precedent applying *Aikens* to the summary-judgment context, I am compelled to conclude that once a defendant-employer has produced evidence of nondiscriminatory justifications for its employment decision, our inquiry must be focused upon the plaintiff's ultimate burden—to prove that the proffered justifications were mere pretext for the employer's retaliation. Because UTHSC has met its burden of producing non-retaliatory reasons for its action, Hague's prima facie case is now irrelevant to the resolution of her claim. I therefore dissent from the holding that on remand, the district court must reconsider Hague's prima facie case of retaliation before proceeding to trial. Accordingly, I would vacate summary judgment on the retaliation claim and remand for trial.